**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| **MARQUITA JACKSON** | ] |
| | ] |
| **Plaintiff,** | ] |
| | ] |
| **v.** | ]     **2:12-cv-4199-KOB** |
| | ] |
| **CITY OF HOMEWOOD, OFFICER** | ] |
| **JASON DAVIS, and CHIEF OF** | ] |
| **POLICE JIM ROBERSON,** | ] |
| | ] |
| **Defendants.** | |

<u>**MEMORANDUM OPINION**</u>

This matter comes before the court on the motions to dismiss filed by the City of Homewood (doc. 16) and Homewood Chief of Police Jim Roberson (doc. 18). Plaintiff Marquita Jackson claims that Defendant Homewood Police Officer Jason Davis used excessive force while arresting her, causing her physical harm and emotional damage and that both the City and Chief Roberson should be held liable for Officer Davis' deprivation of her constitutional rights. Officer Davis has not filed a motion to dismiss, but the City and Chief Roberson have. For the following reasons, the court will GRANT Chief Roberson's motion to dismiss and GRANT IN PART and DENY IN PART the City's motion to dismiss.

I.     <u>STATEMENT OF FACTS</u>

At about 10:00 p.m. on or about July 17, 2012, Officer Davis and other Homewood police officers responded to a call by Destiny Ross at 202 Robert Jennison Road, Apartment 2A, Homewood, Alabama. When the police officers arrived, Ms. Ross and her son, Zin Benson, were inside the residence and Aquilla Bridges, Tabitha Moore, and Ms. Jackson were in the front yard.

1

Ms. Ross told the police officers that Ms. Jackson had a weapon.  Ms. Jackson alleges that she was already on the ground when Officer Davis put his foot on her back and pointed a shotgun at her head. Ms. Jackson and Officer Davis were cursing at each other. Ms. Jackson was handcuffed, no longer armed, and lying down when Officer Davis pressed his boot into her upper back, "grinding her into the asphalt." (Doc. 14, at ¶ 17). Ms. Jackson alleges that she turned her face to tell Officer Davis to get off her back, but then Officer Davis jabbed the barrel of his shotgun into the side of her face pushing her face back into the asphalt and yelled "Shut the f---- up, N-----!" *Id.* at ¶ 19.  Ms. Jackson alleged that this behavior continued for several minutes and that Officer Davis continued to grind his boot into her back, stick his shotgun in her face, and taunt her. Ms. Jackson alleged that Officer Davis' face was "a mask of anger" and his "finger was on the trigger." *Id.* at ¶ 25.  Ms. Ross, who initiated the call to the police, begged Officer Davis to stop jabbing Ms. Jackson with the shotgun, but Officer Davis did not cease until one of the other officers came over and pulled Ms. Jackson out from underneath Officer Davis and put her in the police car.

The above paragraph summarizes all of the specific factual allegations contained in Ms. Jackson's Amended Complaint. Her Amended Complaint also contains four counts: Count I against Officer Davis individually for excessive force under §1983; Count II against the City for Officer Davis' alleged "unskillfulness" under Alabama Code § 11-47-190; Count III against the City for a pattern and practice of excessive force under *Monell v. Dept. of Social Services,* 436 U.S. 658 (1978); and Count IV against the City and Chief Roberson for failure to train and supervise Officer Davis under Alabama state law and § 1983.

In Count III, Ms. Jackson alleges that Officer Davis' unlawful actions were "pursuant to a

2

City policy and custom" and she states:

> Prior to the arrest of the plaintiff, the City permitted, encouraged, and ratified a pattern and practice of misconduct, including the use of excessive force, in that the City:
>
> > a.    failed to discipline or prosecute or in any manner deal with known incidents of misconduct, including incidents involving the use of excessive force; and
> >
> > b.    refused to investigate complaints of misconduct, including complaints of the use of excessive force, and instead officially claimed such incidents were justified and proper.

(Doc.14, at ¶ 42). Additionally, Ms. Jackson alleges that the "systematic failures and deficiencies are policies and customs of the City and caused the police officers of this municipality to believe that the use of excessive force and other misconduct would be tolerated and that complaints would not be honestly or properly investigated, with the foreseeable result that officers would unlawfully use excessive force against citizens." *Id.* at ¶ 43.

In Count IV, Ms. Jackson alleges that "Defendants City and Chief Roberson failed to train and supervise Officer Davis in the non-use of excessive force which was the direct cause of injuries to the Plaintiff. It was foreseeable that the failure to adequately train Officer Davis in the proper use of force would violate the constitutional rights of those citizens the officer encountered. Defendants therefore exhibited reckless disregard for and deliberate indifference to the plaintiff." *Id.* at ¶ 46. Ms. Jackson alleges that Chief Roberson was the policy maker for the City and that he made the deliberate or conscious choice not to instruct, train, supervise, control, or discipline his subordinates. In Count IV, Ms. Jackson also replicates the above block-quoted allegation against Chief Roberson. *See supra* ¶ 42.

3

II.    STANDARD OF REVIEW

Generally, the Federal Rules of Civil Procedure require only that the complaint provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (quoting Fed. R. Civ. P. 8(a)). A plaintiff must provide the grounds of his entitlement, but Rule 8 generally does not require "detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley*, 355 U.S. at 47). It does, however, "demand[ ] more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal* 556 U.S. 662, 678 (2009). Pleadings that contain nothing more than "a formulaic recitation of the elements of a cause of action" do not meet Rule 8 standards nor do pleadings suffice that are based merely upon "labels or conclusions" or "naked assertions" without supporting factual allegations. *Twombly*, 550 U.S. at 555, 557.

The Supreme Court explained that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible on its face*.'" *Iqbal*, 556 U.S. at 678 (quoting and explaining its decision in *Twombly*, 550 U.S. at 570) (emphasis added). To be plausible on its face, the claim must contain enough facts that "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although "[t]he plausibility standard is not akin to a 'probability requirement,'" the complaint must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

4

The Supreme Court has recently identified "two working principles" for the district court to use in applying the facial plausibility standard. The first principle is that, in evaluating motions to dismiss, the court must assume the veracity of *well-pleaded factual* allegations; however, the court does not have to accept as true legal conclusions even when "couched as [] factual allegation[s]" or "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal,* 556 U.S. at 678. The second principle is that "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679. Thus, under prong one, the court determines the factual allegations that are well-pleaded and assumes their veracity, and then proceeds, under prong two, to determine the claim's plausibility given the well-pleaded facts. That task is "context-specific" and, to survive the motion, the allegations must permit the court based on its "judicial experience and common sense. . . to infer more than the mere possibility of misconduct." *Id.* If the court determines that well-pleaded facts, accepted as true, do not state a claim that is plausible, the claim must be dismissed. *Id.*

III.   LEGAL DISCUSSION

The court will not address Count I of the Amended Complaint because it is against Officer Davis individually, and he did not file a motion to dismiss. Additionally, the court will not address Count II under Alabama law of the Amended Complaint because the City did not include any substantive argument on the claim in its motion to dismiss or its reply brief. But, as the City pointed out in its reply brief, Ms. Jackson failed to respond to the City's arguments that Ms. Jackson cannot maintain a § 1983 claim against it for excessive force under the Fourteenth Amendment and that the City is immune from Ms. Jackson's claim for punitive damages. Courts in the Eleventh Circuit have held that the failure of a party to respond to or oppose a pending

motion may constitute an abandonment of the claims at issue in that motion. *See Coal. for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1326 (11th Cir. 2000) (finding that a party's failure to brief and argue an issue before the district court is grounds for declaring it abandoned). Therefore, the court will GRANT the City's motion to dismiss Ms. Jackson's § 1983 claim for excessive force under the Fourteenth Amendment and any claims of punitive damages made against the City and will DISMISS those claims WITH PREJUDICE.

A.     Count III against the City

Count III charges the City with an unlawful pattern and practice under § 1983 of allowing its officers to exert excessive force when making arrests. For the sake of this motion, the court will assume that Ms. Jackson has made a sufficient showing of the underlying constitutional violation, excessive force, because the court need not analyze the merits of her excessive force claim to rule on the instant motion.[1] In *Monell v. Dep't of Social Services*, the Supreme Court ruled that plaintiffs may bring a § 1983 claim against local governments for damages or declaratory or injunctive relief for an action taken pursuant to the municipality's policy or custom.  436 U.S. 658 (1978). "A plaintiff . . . has two methods by which to establish a [municipality's] policy: identify either (1) an officially promulgated [City] policy or (2) an unofficial custom or practice of the [City] shown through the repeated acts of a final policymaker for the [City]." *Grech v. Clayton County, Ga.*, 335 F.3d 1326, 1329 (11th Cir. 2003) (citing *Monell*, 436 U.S. at 690-91).

---

[1]"[A]n inquiry into a governmental entity's custom or policy is relevant only when a constitutional deprivation has occurred." *Rooney v. Watson*, 101 F.3d 1378, 1381 (citing *Vineyard v. County of Murray, Ga.*, 990 F.2d 1207, 1211 (11th Cir.), cert. denied, 510 U.S. 1024 (1993)).

In a case such as this one where Ms. Jackson has not alleged any official City policy, she "must show that the [City] has a custom or practice of permitting it and that the [City's] custom or practice is 'the 'moving force [behind] the constitutional violation.'" *Grech*, 335 F.3d at 1330 (alteration in original) (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989)). "[T]o impose § 1983 liability on a municipality, a plaintiff must show: (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004) (citing *City of Canton*, 489 U.S. at 388). The Supreme Court recently elaborated on the deliberate indifference standard:

> [D]eliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action. . . . Thus, when city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program. . . . The city's policy of inaction in light of notice that its program will cause constitutional violations is the functional equivalent of a decision by the city itself to violate the Constitution. . . . Policymakers' continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action—the deliberate indifference—necessary to trigger municipal liability.

*Connick v. Thompson*, ___ U.S. ___, ___, 131 S.Ct. 1350, 1360 (2011) (citations omitted) (internal quotations omitted).

The allegations that support the City's liability for Officer Davis' use of excessive force are contained in paragraphs 41 to 43 of the Amended Complaint discussed above. Viewed in the light most favorable to the Plaintiff, these allegations support the existence of a widespread pattern of similar violations of an individual's right to be free from excessive force. The Amended Complaint alleges that the City knew about previous incidents of police officers using

7

excessive force and permitted, encouraged, or even ratified such conduct.

Although the Amended Complaint in this case may toe the line of what is acceptable under *Iqbal*'s pleading standards, the City is still on fair notice of the claim against it in this instance. The federal courts operate on a notice pleading system, and *Twombly* and *Iqbal* have not changed the fundamentals of notice pleading under Rule 8. *See Meyer v. Snyders Lance, Inc.*, 2012 WL 6913724, *1 (M.D. Ga. 2012) (stating that *Iqbal* and *Twombly* "did not suggest that the Supreme Court intended to rewrite Rule 12(b)(6) or abandon notice pleading"). Ms. Jackson's Amended Complaint alleged sufficient detail to put the City on adequate notice of the claim asserted against it in Count III. Accordingly, the court will DENY the City's motion to dismiss Count III of the Amended Complaint.

     **B.**   <u>Count IV against the City</u>

Count IV charges the City with failure to properly train or supervise Officer Davis, but the Amended Complaint does not make clear whether this claim rests upon state law or federal law. As the City pointed out in its reply brief, Ms. Jackson failed to respond to the City's argument that her Alabama state law claim against the City for failure to train and supervise is not cognizable.  The failure of a party to respond to or oppose a pending motion may constitute an abandonment of the claims at issue in that motion. *See Coal. for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1326 (11th Cir. 2000) (finding that a party's failure to brief and argue an issue before the district court is grounds for declaring it abandoned). Thus, the court will GRANT the City's motion to dismiss and will DISMISS any Alabama state law claim for failure to train or supervise against the City WITH PREJUDICE.

To the extent Ms. Jackson did intend to hold the City liable for failure to train or

supervise its police officers under federal law and § 1983, the court finds that Ms. Jackson has sufficiently pled a plausible claim for relief. "[T]he inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton,* 489 U.S. at 388. "Only where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality-a 'policy' as defined by our prior cases-can a city be liable for such a failure under § 1983." *Id.* at 389.

The allegations that support the City's liability for failure to train and supervise its police officers are contained in paragraphs 48 through 50 of the Amended Complaint discussed above. Notably, one of these paragraphs is almost identical to Ms. Jackson's allegations of the City's liability for Officer Davis's use of excessive force under *Monell* in Count III. For the same reasons that the court will allow Count III against the City to go forward, it will not dismiss Count IV against the City. The claim as contained in the Amended Complaint was sufficient to put the City on notice of a federal claim for failure to train and supervise against it, and the court finds that is sufficient. Thus, the court will DENY the City's motion to dismiss Count IV for a federal claim for failure to train or supervise against the City.

C.    Count IV against Chief Roberson

Count IV charges Chief Roberson with failure to properly train and supervise Officer Davis on the lawful use of force, but the Amended Complaint does not make clear whether this count rests upon state law or federal law.  As Chief Roberson pointed out in his reply brief, Ms. Jackson failed to respond to his argument that her Alabama state law claim against Chief Roberson for failure to train and supervise is not cognizable.  As stated before, the failure of a

9

party to respond to or oppose a pending motion may constitute an abandonment of the claims at issue in that motion. *See Coal. for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1326 (11th Cir. 2000) (finding that a party's failure to brief and argue an issue before the district court is grounds for declaring it abandoned). Thus, the court will GRANT Chief Roberson's motion to dismiss and will DISMISS any Alabama state law claim for failure to train or supervise against Chief Roberson WITH PREJUDICE.

To the extent Ms. Jackson did intend to hold Chief Roberson liable for failure to train or supervise the City's police officers under federal law and § 1983, Ms. Jackson's claim is barred by the doctrine of qualified immunity. Qualified immunity protects government officials performing discretionary functions from suit in their individual capacities unless the official violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "The purpose of this immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (internal quotation marks and citations omitted).

To receive qualified immunity, a government official "must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002). Government officials act within the scope of their discretionary authority if "the actions were (1) 'undertaken pursuant to the performance of [their] duties' and (2) 'within the scope of [their] authority.'" *Lenz v. Winburn*, 51 F.3d 1540, 1545

10

(11th Cir. 1995) (quoting *Rich v. Dollar*, 841 F.2d 1558, 1564 (11th Cir. 1998)). "Exercising

judgment . . . in the administration of a department or agency of government" is a recognized

discretionary function. *Ex parte*, 405 (Ala. 2000).

The court agrees with the Honorable Judge Albritton that "It cannot be seriously

contested that decisions concerning hiring, training, and supervision of officers fall within the

discretionary authority of the Chief of Police." *Hardy v. Town of Hayneville*, 50 F. Supp. 2d

1176, 1189 (M.D. Ala. 1999). The burden now shifts to Ms. Jackson to show that qualified

immunity is inapplicable in this case. *See Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002)

("Once the defendant establishes that he was acting within his discretionary authority, the burden

shifts to the plaintiff to show that qualified immunity is not appropriate.").

The Supreme Court has articulated a two-part test to determine whether qualified

immunity is appropriate. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001). First, the court must

ask this threshold question: "Taken in the light most favorable to the party asserting the injury,

do the facts alleged show the officer's conduct violated a constitutional right[?]" *Gonzalez v.

Reno*, 325 F.3d 1228, 1234 (11th Cir. 2003) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).

Second, "[i]f a violation could be made out on a favorable view of the parties' submissions, the

next, sequential step is to ask whether the right was clearly established." *Id.* (citing *Saucier*, 533

U.S. at 201).

The court does not even get to the second step in the *Saucier* analysis because even if the

court were to take every factual assertion in Ms. Jackson's Amended Complaint as true, the court

still could not find any factually-based allegation sufficient to show that Chief Roberson violated

Ms. Jackson's rights by failing to train and supervise Officer Davis. Ms. Jackson's Amended

11

Complaint contains no specific factual allegations about Chief Roberson at all, and it does not allege how he failed to train or supervise Officer Davis, or what action he took or failed to take that allegedly deprived Ms. Jackson of her constitutional right to be free from excessive force. Notably, the Amended Complaint also does not allege any specific instance or incident that should have put Chief Roberson on notice that he needed to train, re-train, more closely supervise, or even discipline the police officers under his command on the issue of lawful versus excessive force. Notwithstanding Chief Roberson's name,  paragraphs 48 through 51 of the Amended Complaint are such general assertions that they could be lifted from this pleading and placed in any federal court complaint alleging a claim for failure to train or supervise. Because such generic allegations without any factual support cannot be interpreted by this court to meet the pleading standard set forth in I*qbal*, the court will GRANT Officer Roberson's motion to dismiss Count IV and DISMISS any federal law claim for failure to train or supervise against Officer Roberson WITHOUT PREJUDICE.

IV.   CONCLUSION

For the reasons discussed above, the court will GRANT IN PART and DENY IN PART the City's motion to dismiss and DISMISS WITH PREJUDICE any claims made by Ms. Jackson under the Fourteenth Amendment and all claims for punitive damages against the City. The court will DENY the City's motion to dismiss Count III of the Amended Complaint. The court will GRANT the City's motion to dismiss any claim under Alabama law for failure to train and supervise in Count IV and DISMISS that claim WITH PREJUDICE. The court will DENY the City's motion to dismiss any claim under federal law for failure to train and supervise in Count IV.

Additionally, the court will GRANT Chief Roberson's motion to dismiss. The court will DISMISS WITH PREJUDICE any claim under Alabama law for failure to train and supervise in Count IV and DISMISS WITHOUT PREJUDICE any claim under federal law for failure to train and supervise in Count IV.

Counts I and II remain before the court to the extent that they seek compensatory damages from the City and do not allege violations of Ms. Jackson's rights under the Fourteenth Amendment.  The court will issue an order simultaneously to that effect.

DONE and ORDERED this 29th day of May, 2013.

KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE